**IN THE UNITED STATES DISTRICT COURT**
**FOR THE MIDDLE DISTRICT OF PENNSYLVANIA**

AIDEN WALLACE and
JESSICA KEPLER,

Plaintiffs,

v.

BENJAMIN HEPBURN,
MONTOURSVILLE AREA SCHOOL
DISTRICT, and COMMONWEALTH
OF PENNSYLVANIA,

Defendants.

No. 4:26-CV-00158

(Chief Judge Brann)

**MEMORANDUM OPINION**

**SEPTEMBER 3, 2026**

## I. BACKGROUND

On January 23, 2026, Plaintiffs Aiden Wallace and Jessica Kepler (Wallace's mother), filed a three-count complaint against Defendants the Montoursville Area School District and Benjamin Hepburn (a teacher there).[1] Approximately two months later, in mid-March, the same Plaintiffs filed a substantially similar five-count complaint against the same two Defendants plus the Commonwealth of Pennsylvania in the Court of Common Pleas of Lackawanna County, Pennsylvania.[2]

---

1 Doc. 1 (Compl.).
2 No. 4:26-CV-0893, Doc. 1-3 (Pa. Compl.).

Defendants removed the second proceeding to this Court,[3] and the Court then consolidated the cases.[4]

On March 16, 2026, Defendants Montoursville and Hepburn filed a motion to dismiss pursuant to Federal Rule of Civil Procedure 12(b)(6) for failure to state a claim.[5] And, after the cases were consolidated, Pennsylvania filed its own 12(b)(6) motion to dismiss.[6] Those motions are now ripe for disposition; for the reasons that follow, they are granted. Plaintiffs' motion for oral argument is denied.[7] Plaintiffs will be provided limited leave to amend the complaint.

## II. DISCUSSION

### A. Motion to Dismiss Standard

Under Federal Rule of Civil Procedure 12(b)(6), courts dismiss a complaint, in whole or in part, if the plaintiff fails to "state a claim upon which relief can be granted." Following the landmark decisions of *Bell Atlantic Corp. v. Twombly*[8] and *Ashcroft v. Iqbal*,[9] "[t]o survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'"[10] The United States Court of Appeals for the Third Circuit has

---

3 No. 4:26-CV-0893, Doc. 1 (Pa. Notice of Removal).
4 Doc. 17 (Consolidation Order).
5 Doc. 9 (Local Defs.' Mot. to Dismiss).
6 Doc. 34 (Pa. Mot. to Dismiss).
7 Doc. 24 (Mot. for Oral Arg.); *see* Local Rule 7.9.
8 550 U.S. 544 (2007).
9 556 U.S. 662 (2009).
10 *Id.* at 678 (quoting *Twombly*, 550 U.S. at 570).

instructed that "[u]nder the pleading regime established by *Twombly* and *Iqbal*, a court reviewing the sufficiency of a complaint must take three steps": (1) "take note of the elements the plaintiff must plead to state a claim"; (2) "identify allegations that, because they are no more than conclusions, are not entitled to the assumption of truth"; and (3) "assume the[] veracity" of all "well-pleaded factual allegations" and then "determine whether they plausibly give rise to an entitlement to relief."[11]

### B. Facts Alleged in the Complaint

Plaintiffs have two active complaints in this consolidated litigation, but the facts alleged in each are substantially similar.[12] As I will explain in more detail *infra*, neither complaint—the 97-page document originally filed in this Court nor the 83-page filing removed from Lackawanna County—offers a "short and plain statement of the claim" that is "simple, concise, and direct."[13] Accordingly, the Court recites the general factual allegations without citation to the record.

On October 4, 2023, Aiden Wallace went on school-sponsored service trip to the Loyalsock State Forest, a public land administered by the Pennsylvania Department of Conservation and Natural Resources ("DCNR"). The trip was organized and chaperoned by Benjamin Hepburn, who had recently come out of retirement, and approved by Montoursville Area School District Principal Matthew

---

[11] *Connelly v. Lane Construction Corp.*, 809 F.3d 780, 787 (3d Cir. 2016) (internal quotations and citations omitted).

[12] Doc. 1; No. 4:26-CV-0892, Doc. 1-3.

[13] Fed. R. Civ. P. 8(a)(2), 8(d)(1).

Johnson. Wallace's mother, Jessica Kepler, signed a permission slip approving his participation.[14] Wallace had gone on a similar trip the year before.

Montoursville students had been taking service trips of this type to Pennsylvania's public lands for approximately a decade before 2023. Montoursville submitted an "Application to Become a Conservation Volunteer" to DCNR in 2014, which required the school to provide the names of volunteers to DCNR. It renewed the Conservation Volunteer agreement in 2015 under the same terms. Neither agreement had any specified end date. But Montoursville did not provide the names of its volunteers to DCNR, or, for that matter, communicate with DCNR about any of its service trips in the years following the agreements.

The same was true of the October 4, 2023, service trip. Hepburn did not inform DCNR that students would be performing volunteer work at the Loyalsock State Forest nor give DCNR any heads-up that they would be in the Forest at all. Nor did he give the students any kind of guidance or safety briefing about what to expect in the Forest or how they should behave.

That day, approximately thirty students, including Wallace, participated in a cleanup of the Jacoby Falls Trail section of the Loyalsock State Forest. Jacoby Falls

---

[14] The body of both complaints repeatedly names Wallace's mother "Plaintiff Jessica Calehuff," but she is named "Jessica Kepler" in both case captions. *See, e.g.*, Doc. 1 ¶¶ 2, 45. This difference is only addressed in the state filing, which describes her, confusingly, as "Jessica Calehuff a/k/a Jessi[c]a Kepler" and "Jessica Calehuff Kepler." No. 4:26-CV-0893, Doc. 1-3 ¶ 2. The Court uses "Kepler" to avoid confusion.

Trail is a 1.6-mile out-and-back hiking trail leading to Jacoby Falls, an approximately thirty-foot waterfall which cascades onto a rocky bed. The trail is marked with yellow blazes which stop near the waterfall. There is no other marking to indicate the end of the trail and the beginning of a potentially hazardous area. DCNR employees were also working in the area and saw the students. Hepburn asked the employees if the students could clean the trail; they said that they could.

At some point Wallace made his way to the top of Jacoby Falls. There, he "apparently slipped on some moss or other slippery substance" and fell thirty feet onto the rocks below. Wallace was severely injured and has undergone extensive medical treatment as a result.

After his injury, Wallace filed a claim for workers' compensation with the Pennsylvania Workers' Compensation Board ("WCB"). Wallace believed he was entitled to workers' compensation because Pennsylvania law defines "employes" entitled to workers' compensation to include "volunteer members of the State Parks and Forest Program, who shall be declared to be employees of the Commonwealth for the purposes of this act."[15] The presiding Workers' Compensation Judge ("WCJ") denied Wallace's claim, reasoning that by failing to communicate with DCNR in advance of its service trips over the years, Montoursville had not complied with the requirements of the Conservation Volunteer agreements or Loyalsock State

[15] 77 Pa. Stat. & Cons. Stat. § 1031(a)(4).

Forest procedures, and the agreement had therefore lapsed. Accordingly, the WCJ concluded that Wallace was not volunteering pursuant to the law and thus could not be considered an employee of the Commonwealth. It is not clear whether Wallace appealed this decision to the WCB, or, if he did, he appealed an affirmance to the Commonwealth Court of Pennsylvania.

**C. Analysis**

Like their factual allegations, Plaintiffs' legal causes of action are poorly framed and hard to parse. Defendants make a valiant effort to shadowbox at claims that Plaintiffs may be trying to assert, while Plaintiffs' briefing—despite spanning *more than 100 pages as to just one of the motions*—fails to clearly illuminate the relevant legal issues.[16] Nevertheless, like Defendants, in my analysis I attempt to consider each argument that Plaintiffs appear to have offered. If I have missed any, they must be defined far more clearly in Plaintiffs' amended complaint.

**1. Workers' Compensation-Based Claims**

The vast majority of Plaintiffs' arguments center on what they believe was the wrongful denial of Wallace's eligibility for workers' compensation benefits. They

[16] The Court did grant Plaintiffs' motion for a page extension despite their failure to comply with Local Rule 7.8(b)(3)'s requirement that such motions "shall specify the length of the brief requested," and also approved their motion to file a surreply. Docs. 22, 31 (Orders). Those decisions have proven counterproductive. The Court therefore does not intend to authorize further variances from Local Rules 7.7 and 7.8(b) in this matter without a compelling showing of need. Should Plaintiffs ignore or abuse those rules again, *see* Doc. 38 (arguing that Plaintiffs' opposition to Pennsylvania's motion exceeded the page or word limit of Local Rule 7.8(b) without the Court's authorization), the Court will strike the offending document, which could result in a Defendant's motion being deemed unopposed.

appear to proceed primarily under 42 U.S.C. § 1983 for a violation of the Fourteenth Amendment's protections of procedural and substantive due process. Those claims must all fail because Wallace never had a protected entitlement to workers' compensation benefits.

Before getting there, however, the Court notes that Plaintiffs cannot directly challenge the WCJ's denial of Wallace's workers' compensation claim in federal court. Claims for workers' compensation in Pennsylvania must be filed with the WCB to be heard in the first instance by a WCJ.[17] The claimant can then appeal that decision to the WCB,[18] and, if still aggrieved, may further appeal the WCB's decision to the Commonwealth Court of Pennsylvania.[19] But federal courts do not have jurisdiction to entertain direct appeals of state administrative decisions.[20]

Turning back to Plaintiffs' constitutional arguments, both substantive and procedural due process claims require a plaintiff to show that he was deprived of a constitutionally protected interest, such as a property interest.[21] A greater swath of

---

[17] 77 Pa. Stat. and Cons. Stat. § 711; *see Gillette v. Wurst*, 937 A.2d 430, 535 (Pa. 2007) ("The courts of common pleas lack jurisdiction to adjudicate Workers' Compensation claims . . .").

[18] *See, e.g.*, 77 Pa. Stat. and Cons. Stat. § 854.2. As noted, it is not clear whether Wallace exhausted his appellate options.

[19] 2 Pa. Cons. Stat. § 702; *see West Conshohocken Borough v. Markland*, 329 A.3d 753 (Pa. Commw. Ct. 2025); *Jo Jo Pizza v. Larry Pitt & Assocs., P.C.*, 264 A.3d 370 (Pa. Super. Ct. 2021) (table) (transferring workers' compensation appeal to Commonwealth Court).

[20] *Chicago, R.I. & P.R. Co. v. Stude*, 346 U.S. 574, 581 (1954); *District of Columbia Ct. of Appeals v. Feldman*, 460 U.S. 462 (1983); *see Marran v. Marran*, 376 F.3d 143, 149-50 (3d Cir. 2004).

[21] *Hill v. Borough of Kutztown*, 455 F.3d 225, 233-34 (3d Cir. 2006) (quoting *Alvin v. Suzuki*, 227 F.3d 107, 116 (3d Cir. 2000)) (procedural due process); *Nicholas v. Pa. State Univ.*, 227 F.3d 133, 139-40 (3d Cir. 2000) (citing *DeBlasio v. Zoning Bd. of Adjustment*, 53 F.3d 592, 598 (3d Cir. 1995)) (substantive due process).

interests are protected by procedural due process than by substantive due process.[22] Whether a plaintiff has a property interest that is cognizable under the procedural due process clause is determined by reference to state law.[23]

Plaintiffs repeatedly insist that Wallace had a cognizable property interest in workers' compensation benefits, and that he was unconstitutionally deprived of that interest without notice and an opportunity to be heard when Montoursville failed to meet its obligations under the Conservation Volunteer agreement and therefore created a situation in which its volunteering students would not be considered Commonwealth employees. In several other instances, Plaintiffs contend that Wallace had a property interest in his legal cause of action to seek workers' compensation benefits, which he was deprived of in the same way. These arguments fundamentally misunderstand what the due process clause protects and how it does so.

First, and most simply, Pennsylvania's courts have repeatedly and consistently held that "claimants do not have vested property rights in workers' compensation benefits" because they are provided by the legislature and subject to change.[24]

---

22 *Nicholas*, 227 F.3d at 140 ("[N]ot all property interests worthy of a procedural due process protection are protected by the concept of substantive due process." (quoting *Reich v. Beharry*, 883 F.2d 239, 243 (3d Cir. 1989))).

23 *Dee v. Borough of Dunmore*, 549 F.3d 225, 229 (3d Cir. 2008) (citing *Bd. of Regents v. Roth*, 408 U.S. 564, 577 (1972)).

24 *City of Pittsburgh v. Dobbs*, 292 A.3d 633, at *4 (Pa. Commw. Ct. 2021) (table); *White v. City of Phila.*, 278 A.3d 416, at *4 (Pa. Commw. Ct. 2022) (table).

More fundamentally, even assuming that a property interest could exist, Plaintiffs' arguments are deficient because they all take issue with Montoursville's actions <u>before</u> Wallace had any conceivable claim to workers' compensation and, thus, any protected property interest. "It is axiomatic that a cognizable liberty or property interest must exist in the first instance for a procedural due process claim to lie."[25] "The Fourteenth Amendment's procedural protection of property is a safeguard of the security of interests that a person *has already acquired* in specific benefits."[26] Applying these principles, the procedural due process cases have primarily focused on individuals whose "entitlement to benefits *had been established*."[27] Cases involving "applicants for government benefits, as distinct from those already receiving them," have by and large not found any protectible right.[28]

In other words, in order to have an interest that is protected, "a person must have more than an abstract need or desire for it. He must have more than a unilateral expectation of it. He must, instead, have a legitimate claim of entitlement to it."[29]

---

[25] *Mudric v. Atty. Gen. of United States*, 469 F.3d 94, 98 (3d Cir. 2006) (citing *Roth*, 408 U.S. at 569).

[26] *Roth*, 408 U.S. at 576 (emphasis added).

[27] *Am. Mfrs. Mut. Ins. Co. v. Sullivan*, 526 U.S. 40, 60 (1999) (emphasis added) (discussing *Goldberg v. Kelley*, 397 U.S. 254 (1970) and *Mathews v. Eldridge*, 424 U.S. 319 (1976)).

[28] *Alessi ex rel. Alessi v. Commw. of Pa. Dep't of Pub. Welfare*, 893 F.2d 1444, 1453 (3d Cir. 1990) (quoting *Lyng v. Payne*, 476 U.S. 926, 942 (1986)); *see, e.g.*, *Robb v. City of Phila.*, 733 F.2d 286, 292-93 (3d Cir. 1984) (no protected property interest in continued employment); *Dyche v. Bonney*, 277 F. App'x 244, 247-48 (3d Cir. 2008) (no protected property interest in admission to Pennsylvania State Police academy).

[29] *Roth*, 408 U.S. at 577; *Lujan v. G & G Fire Sprinklers, Inc.*, 532 U.S. 189, 196 (2001) ("In each of these cases, the claimant was denied a right by virtue of which he was presently entitled either to exercise ownership dominion over real or personal property, or to pursue a gainful occupation. Unlike those claimants, respondent has not been denied any present entitlement.").

And so, a workers' compensation claimant does not obtain a property interest in workers' compensation benefits that can give rise to a procedural due process claim until he establishes that he is legally eligible for and entitled to those benefits.[30] Eligibility requires demonstrating a qualifying injury.[31] Speaking more generally, legal rights do not vest until they "become a title, legal or equitable, to the present or future enforcement of a demand, or legal exemption from a demand made by another."[32] A statutory right vests on "the date the injury occurs, and thus the date the cause of action and the relevant defenses accrue."[33] Without an injury, any right to recover benefits or damages is only hypothetical, ethereal, and "abstract."[34]

Therefore, Wallace could have obtained a cognizable property interest in workers' compensation benefits, if he met the eligibility criteria, no earlier than October 4, 2023—the date he fell. Before that date, and during the period of all of Montoursville's challenged conduct, Wallace had no right to workers' compensation (and, indeed, no inkling that he would ever need it). Without any property interest at

30 *Am. Mfrs. Mut. Ins. Co.*, 526 U.S. at 61 ("While they indeed have established their initial *eligibility* for medical treatment, they have yet to make good on their claim that the particular medical treatment they received was reasonable and necessary. Consequently, they do not have a property interest—under the logic of their own argument—in having their providers paid for treatment that has yet to be found reasonable and necessary."); *cf. Walters v. Nat'l Ass'n of Radiation Survivors*, 473 U.S. 305, 320 n.8 (1985) (noting that the Supreme Court "has never . . . held" that applicants for benefits have a protected claim of entitlement).

31 *See* 77 Pa. Stat. & Cons. Stat. § 431.

32 *Konidaris v. Portnoff Law Assocs., Ltd.*, 953 A.2d 1231, 1242 (Pa. 2008) (quoting *Lewis v. Pa. R. Co.*, 69 A. 821, 823 (Pa. 1908)).

33 *Id.*

34 *Roth*, 408 U.S. at 577.

the relevant time, Montoursville's conduct did not deprive Wallace of anything except the abstract hope of potentially receiving a benefit should it become necessary in the future. Accordingly, no greater process was due.

None of Plaintiffs' cases are at all to the contrary. In *Mullane v. Central Hanover Bank & Tr. Co.*, the petitioners challenged the state's action to extinguish their rights to recover for improper management of a trust of which they were already beneficiaries and which funds had already been fully managed.[35] In *Logan v. Zimmerman Brush Co.*, the petitioner had already been fired from his job and commenced his administrative claim before the procedural violation at issue.[36] And in *Goldberg v. Kelly* and *Mathews v. Eldridge*, the entitlement beneficiaries had already been deemed eligible and were actively receiving benefits, and were challenging the state's decision to end those benefits.[37]

Nor does Plaintiffs' attempt to recast Wallace's property interest as a right to a cause of action make a difference. Though it is certainly true that an individual has a property interest in a cause of action,[38] "[i]n tort claims," from which workers' compensation rights derive, "there is no cause of action and therefore no vested property right in the claimant upon which to base a due process challenge until injury

---

[35] 339 U.S. 306 (1950).
[36] 455 U.S. 422, 426-27 (1982).
[37] *See Am. Mfrs. Mut. Ins. Co.*, 526 U.S. at 40.
[38] *Logan*, 455 U.S. 422.

actually occurs."[39] So the same timing problem arises. At the time of Montoursville's actions, Wallace had no property interest that could have merited protection.

Of course, Wallace was entitled to "a hearing at which [he]" could attempt to "show[] that [he] w[as], in fact, within the statutory terms of eligibility" for workers compensation.[40] But he was given that when he pressed his claim before the WCJ. He offers no argument whatsoever to suggest that that hearing was procedurally unfair. So he received all the process that he was due. That he did not become eligible for the benefit due to government conduct beyond his control is unfortunate, but nevertheless "not the sort of state action that triggers procedural due process protection."[41]

As to substantive due process, the United States Court of Appeals for the Third Circuit has held in binding precedent that the benefit of public employment is not "a fundamental property interest entitled to substantive due process protection."[42] Other appellate courts have held similarly regarding benefits like welfare, unemployment

---

[39] *Mathis v. Eli Lilly & Co.*, 719 F.3d 134, 141 (6th Cir. 1983); *see SodexoMAGIC, LLC v. Drexel Univ.*, 24 F.4th 183, 218 (3d Cir. 2022) (quoting *Gleason v. Borough of Moosic*, 15 A.3d 479, 484 (Pa. 2011)) ("[A] cause of action accrues 'when an injury is inflicted and the corresponding right to institute a suit for damages arises.'").

[40] *Roth*, 408 U.S. at 577; *see Alessi*, 893 F.2d at 1453 ("This court has accorded procedural due process protection to applicants who did not have present enjoyment of a benefit, as have other federal courts . . . . But in those cases, determinations had been made by the defendants to deny benefits to the plaintiffs, and the plaintiffs were claiming that they had not had adequate procedural protection in the denial process." (internal citations omitted)).

[41] *Alessi*, 893 F.2d at 1453.

[42] *Nicholas*, 227 F.3d at 142-43.

compensation, and government pensions.[43] Indeed, even more critical entitlements like access to "water and sewer" services do not rise to the level of substantive due process protection.[44] So I readily conclude that workers' compensation benefits are not a fundamental property interest protected by substantive due process.[45]

Plaintiffs' theories for recovering workers' compensation benefits under 42 U.S.C. § 1983 fail as a matter of law.[46] Thus, they will be dismissed with prejudice.[47]

### 2. State Law Claims

Plaintiffs appear to bring several claims arising under Pennsylvania law, although they are extremely difficult to parse. I attempt to resolve them all.

First, it appears that Plaintiffs are seeking a monetary remedy for violations of the Pennsylvania Constitution. "Pennsylvania does not recognize a private right

---

43 *Lavine v. Milne*, 424 U.S. 577, 584 n.9 (1976); *Valot v. Se. Local Sch. Dist. Bd. of Educ.*, 107 F.3d 1220, 1233 (6th Cir. 1997) (Ryan, J., concurring); *Rittenhouse Entertainment, Inc. v. City of Wilkes-Barre*, 782 F. App'x 148, 155 (3d Cir. 2019); *see Pence v. Mayor of Bernards Twp.*, No. 08-CV-2312, 2010 WL 2925901, at *9 (D.N.J. July 21, 2010) (collecting appellate authority).

44 *Ransom v. Marrazzo*, 848 F.2d 398, 411-12 (3d Cir. 1988).

45 *Rumph v. State Workmen's Ins. Fund.*, 964 F. Supp. 180, 188-89 (E.D. Pa. 1997) ("[T]he Court finds that Plaintiff's initial denial of workmen's compensation benefits is not one of the fundamental property interests worthy of substantive due process protection.").

46 It does not appear to the Court that Plaintiffs are attempting to frame one of their claims as a violation of the Fourteenth Amendment's Equal Protection clause but, if they are, *see* Doc. 10 at 18-19, I agree with Defendants that they have failed to plead either that Wallace was a "member of a protected class," *Oliveira v. Twp. of Irvington*, 41 F. App'x 555, 559 (3d Cir. 2002), or that he was "treated differently from others similarly situated," *Village of Willowbrook v. Olech*, 528 U.S. 562, 564 (2000), such that there was any actionable discrimination against him.

47 *Young v. Spyker*, No. 1:23-CV-1839, 2024 WL 2401983, at *6 (M.D. Pa. May 23, 2024) (finding that amendment would be futile when claims failed as a matter of law); *Harper v. Dinella*, 589 F. App'x 67, 69 (3d Cir. 2015) (same).

of action for damages in a suit alleging violation of the Pennsylvania Constitution."[48] So that theory fails. Plaintiffs also confusingly argue that 42 U.S.C. § 1983 authorizes suits for money damages for violations of a state constitution.[49] That is wrong: "a claimed violation of a state constitutional right is not cognizable under § 1983."[50] Thus, all claims brought pursuant to the Pennsylvania Constitution, which solely seek monetary damages, must fail as a matter of law and are therefore dismissed with prejudice.[51]

As to Pennsylvania common-law tort claims, Defendants are all state actors of some form or another, and are therefore protected by significant legal immunities.[52] To succeed on their claims, Plaintiffs must show that an exception to these immunities applies. Plaintiffs argue for two exceptions. As to Montoursville and Hepburn, they contend that the exception for damages to Wallace's personal

---

48 *Ekwunife v. City of Phila.*, 245 F. Supp. 3d 660, 678-79 (E.D. Pa. 2017); *Korth v. Hoover*, 190 F. Supp. 3d 394, 407 (M.D. Pa. 2016) (citing *Pocono Mountain Charter Sch. v. Pocono Mountain Sch. Dist.*, 442 F. App'x 681, 687 (3d Cir. 2011)). Plaintiffs do not seek any injunctive relief. *See Pocono Mountain*, 442 F. App'x at 688.

49 *See* Doc. 20 at 50 ("Claims against political subdivisions based on the Pennsylvania constitution can be remedied in claims under 42 U.S.C. § 1983 . . . . The remedy is actually provided by federal law.").

50 *Radvansky v. City of Olmstead Falls*, 395 F.3d 291, 314 (6th Cir. 2005) (collecting appellate authority); *Berg v. County of Allegheny*, 219 F.3d 261, 268 (3d Cir. 2000) ("To make a prima facie case under § 1983, the plaintiff must demonstrate that a person acting under color of law deprived him of a *federal* right." (emphasis added)); *see, e.g.*, *Vasquez v. Garcia*, 432 F. Supp. 3d 92, 99 n.3 (D. Conn. 2019).

51 Plaintiffs can attempt to restate these claims to seek declaratory or injunctive relief, but must keep in mind that appropriate injunctive relief would not include a demand to pay workers' compensation benefits. *Edelman v. Jordan*, 415 U.S. 651 (1974); *see Pennhurst State Sch. & Hosp. v. Halderman*, 465 U.S. 89 (1984).

52 *See* 42 Pa. Cons. Stat. §§ 8521, 8541, 8545; 1 Pa. Cons. Stat. § 2310.

property (in the form of the workers' compensation benefits and attendant cause of action) applies.[53] And as to Pennsylvania, they cite an exception for damages caused by "a dangerous condition of Commonwealth agency real estate . . . including Commonwealth-owned real property,"[54] arguing that Jacoby Falls was the dangerous condition that caused Wallace's harm, and Pennsylvania should have provided clearer markings to indicate the danger it posed.

The personal property exception does not apply because, as explained above, Wallace had no vested property interest in workers' compensation benefits or an attendant lawsuit at the time of his fall. Montoursville and Hepburn are therefore immune from common law tort claims.

The real estate exception does not apply because it does not impose a duty upon Commonwealth agencies to proactively alter Pennsylvania's real estate in order to make it safer.[55] Instead, "allegations of the absence of a safety feature falls outside the real estate exception."[56] Of course, where a Commonwealth agency *has* altered the landscape, it cannot do so negligently such that the alteration creates a dangerous condition.[57] But Plaintiffs contend that the yellow blazes on the path

---

53 42 Pa. Cons. Stat. § 8542(b)(2).

54 42 Pa. Cons. Stat. § 8522(b)(4).

55 *Dean v. Commw. Dep't of Transp.*, 751 A.2d 1130 (Pa. 2000).

56 *Essington v. Monroe Cnty. Transit Auth.*, 302 A.3d 219, 237 (Pa. Commw. Ct. 2023); *Doyle v. Muniz-Nieves*, 343 A.3d 361, 367 (Pa. Commw. Ct. 2025); *see Wise v. Huntingdon Cnty. Hous. Dev. Corp.*, 249 A.3d 506, 517 (Pa. 2021) ("The dangerous condition must be an artificial condition or defect of the land itself, as opposed to the absence of such a condition. (citing *Snyder v. Harmon*, 562 A.2d 307, 312 (Pa. 1989))).

57 *Cagey v. Commw.*, 179 A.3d 458 (Pa. 2018).

should offer some clearer demarcation of where the already-existing dangerous conditions begin—the same argument that was considered and rejected in *Doyle v. Muniz-Nieves*.[58] Plaintiffs argue that the case stating the former legal proposition, *Dean*, was overruled by the case stating the latter, *Cagey*. It expressly was not.[59] Accordingly, Pennsylvania enjoys sovereign immunity from this claim.

As all Defendants are immune, the common law tort claims must be dismissed. Given their failure as a matter of law, both dismissals are with prejudice.

### 3. State-Created Danger

Although still undeveloped and ultimately insufficient on the complaint as pled, Plaintiffs' best argument comes under a state-created danger theory of a substantive due process violation.

To make out a state-created danger claim, a plaintiff must allege that "1. the harm ultimately caused was foreseeable and fairly direct; 2. a state actor acted with a degree of culpability that shocks the conscience; 3. a relationship between the state and the plaintiff existed such that the plaintiff was a foreseeable victim of the defendant's acts, or a member of a discrete class of persons subjected to the potential harm brought about by the state's actions, as opposed to a member of the public in

---

[58] 343 A.3d at 367 ("Likewise, the fact additional signs and barriers may deter horseback riders from using the Park's trails and make the Park safer for pedestrians does not demonstrate a deficiency in the existing signs and barriers.").

[59] *Cagey*, 179 A.3d at 466 ("We have not been asked to overrule *Dean*."); *see id.* n.6 ("We reject the suggestion in Justice Wecht's concurring opinion that we overrule *Dean*, for several reasons.").

general; and 4. a state actor affirmatively used his or her authority in a way that created a danger to the citizen or that rendered the citizen more vulnerable to danger than had the state not acted at all."[60]

As to Pennsylvania, this claim fails on the third and fourth elements. Plaintiffs merely argue that Pennsylvania created a danger by not doing enough to warn parkgoers about the dangers of Jacoby Falls. But that facially flunks the test because that risk applied to "the public in general."[61] Moreover, failing to add warnings is not "affirmatively us[ing]" the state's authority; it is a classic failure to act, which is not actionable on a state-created danger theory.[62]

As to Montoursville and Hepburn, the argument is much stronger, but the allegations in the complaint fail to meet the "shocks the conscience" standard.[63] In this context, where Montoursville and Hepburn had time to plan and organize the trip to the Loyalsock State Forest, "deliberate indifference is sufficient" to meet "the

---

60 *L.R. v. Sch. Dist. of Phila.*, 836 F.3d 235, 241-42 (3d Cir. 2016).

61 *L.R.*, 836 F.3d at 242.

62 *Johnson v. City of Phila.*, 975 F.3d 394, 400-01 (3d Cir. 2020) ("[W]e have repeatedly held that an alleged failure *to do something*, standing alone, cannot be the basis for a state-created danger claim.").

63 Montoursville and Hepburn did not address the state-created danger issue in their opening brief because it was not apparent that Plaintiffs were pursuing such a claim until they filed their opposition. In their reply, Montoursville and Hepburn argue that there was no affirmative act. *See* Doc. 25 at 13-14. As below, I agree with Judge Posner's reasoning in *Slade v. Bd. of Sch. Directors of the City of Milwaukee* that by organizing the field trip and taking the students along, Montoursville and Hepburn may well have acted in a cognizably affirmative way. 702 F.3d 1027, 1030-31 (7th Cir. 2012). I do not need to definitively resolve that issue here because of the analysis that follows.

level of culpability required."[64] Deliberate indifference includes "a conscious disregard of a substantial risk of serious harm."[65]

The Honorable Richard Posner's reasoning in a closely analogous case from the United States Court of Appeals for the Seventh Circuit convinces the Court that neither Montoursville nor Hepburn was deliberately indifferent on the facts as they have so far been alleged. In *Slade v. Board of School Directors of City of Milwaukee*, the plaintiffs pursued a state-created danger claim against a school district and its officials after their son drowned on a school trip to a lake.[66] An assistant principal organized and led the trip for 92 seventh graders to swim at a public beach with no lifeguard (in violation of a district policy against swimming field trips without a lifeguard).[67] Some number of chaperones also attended, but it does not appear that any of them had lifeguard training.[68] After lunch, the plaintiffs' son ventured into the lake and was drawn into an area where the water was above his head.[69] He was not a strong swimmer and, sadly, drowned.[70]

Judge Posner, writing for a unanimous panel, affirmed the district court's grant of summary judgment to the school, holding that the defendants were at most

64 *L.R.*, 836 F.3d at 246.
65 *Id.*
66 702 F.3d 1027, 1028-29 (7th Cir. 2012).
67 *Id.* at 1029.
68 *Id.* (not stating number of chaperones but noting that at least one other teacher was present and implying that other adults were there).
69 *Id.*
70 *Id.*

"negligent," which fell below the required deliberate indifference threshold.[71] In reaching that conclusion, Judge Posner highlighted that the school officials had no reason to know that the decedent "was a poor swimmer, or that if he was he would nevertheless wade too far into the lake, or that he or any other student was in significant danger."[72] Further, he noted that the officials "did take some steps to try to ensure the children's safety. They sent permission slips home; the slips referred to 'playing in the water'; there were teacher-chaperones accompanying [the assistant principal]—she was not the only adult at the scene and she told one of them . . . to watch [the decedent] and his playmates while they played in the water."[73]

Hepburn's actions were sufficiently analogous to the *Slade* assistant principal's that the Court concludes he was also non-actionably negligent.[74] Hepburn had no reason to foresee that Wallace would venture beyond the marked trail at all, let alone that he would climb to the top of Jacoby Falls and approach the edge. And Hepburn did take some protective steps, including sending home permission slips and accompanying the students himself. It is true that unlike in *Slade*, Hepburn did not take additional chaperones on the trip, nor is it clear that Hepburn was watching Wallace when he was ascending Jacoby Falls. But Hepburn was not deliberately

---

71 *Id.* at 1032-33.
72 *Id.* at 1032.
73 *Id.*
74 *Cf. DeAnzona v. City & Cnty. of Denver*, 222 F.3d 1229, 1233 (10th Cir. 2000) (holding that camp counselor who failed to watch five-year-old child when he approached a lake where other counselors were present was negligent at most).

indifferent to conclude that the students he was chaperoning required less oversight than the students in *Slade*; they were only one-third of the number in *Slade*, were significantly older (Wallace was seventeen at the time), and at least some of them (including Wallace) had attended similar service trips before, apparently without incident.

On the facts as pled, Hepburn was at most negligent. Accordingly, Plaintiffs have not made out a claim for state-created danger. However, unlike Plaintiffs' other arguments, this theory does not fail as a matter of law: Plaintiffs could allege additional facts that would indicate Hepburn acted with deliberate indifference, so this dismissal is without prejudice.

**4. Additional Issues**

Pennsylvania notes two additional issues that would preclude some or all of the claims against it. First, its primary argument in its opening brief contends that the statute of limitations has run as to Ms. Kepler's claims brought in her personal capacity.[75] In their opposition, Plaintiffs do not so much as acknowledge this argument.[76] Failure to address a clearly presented argument for dismissal functions as the waiver or abandonment of the relevant claim.[77] Accordingly, all of Ms. Kepler's claims against Pennsylvania must be dismissed with prejudice.

---

75 Doc. 26 at 5-7.

76 *See* Doc. 36.

77 *Robins v. Wetzel*, No. 3:21-CV-1474, 2026 WL 2393215, at *16 (M.D. Pa. Aug. 17, 2026) (collecting cases).

Second, Pennsylvania notes that, although it appears Plaintiffs take issue with the actions of DCNR employees, they formally brought their suit against the Commonwealth of Pennsylvania itself. "[T]he Commonwealth of Pennsylvania, itself, which is clearly not a Commonwealth agency, still enjoys absolute immunity pursuant to 1 Pa. Cons. Stat. § 2310."[78] So, even if they did not fail on the merits, the claims against Pennsylvania would have to be dismissed with prejudice based on Pennsylvania's absolute immunity. Plaintiffs may amend to name DCNR—the proper state agency—as a defendant, but must take note of my merits rulings above, which would apply equally to the same claims had they been asserted against DCNR.[79]

**5. Rule 8**

Federal Rule of Civil Procedure 8 requires that a pleading "must contain . . . a *short and plain* statement of the claim," which should be "simple, concise, and direct."[80] As noted several times *supra*, Plaintiffs' complaints do not come close to

---

78 *Bonsavage v. Borough of Warrior Run*, 676 A.2d 1330, 1331 (Pa. Commw. Ct. 1996); *Porter v. Commonwealth*, 238 A.3d 548, at *3 (Pa. Commw. Ct. 2020) (table) ("[W]e have noted that 'the Commonwealth government and its various agencies and officers are separate entities and that the Commonwealth of Pennsylvania, itself, which is clearly not a Commonwealth agency, still enjoys absolute immunity pursuant to 1 Pa. C.S. § 2310.'" (quoting *Brouillette v. Wolf*, 213 A.3d 341, 356 (Pa. Commw. Ct. 2019))).

79 Pennsylvania also argues that Plaintiffs' claims against it and Montoursville/Hepburn are misjoined. That argument is based on its forgivable misunderstanding that Plaintiffs' claims against Montoursville and Hepburn are focused solely on the pre-fall workers' compensation issue. *See* Doc. 26 at 19-20. As the above analysis clarifies, it does appear to the Court that Plaintiffs are attempting to recover damages related to the fall itself from both Montoursville/Hepburn and Pennsylvania. Joinder is therefore proper.

80 Fed. R. Civ. P. 8(a)(2), 8(d)(1).

this standard. Each complaint is instead nearly 100 pages long and riddled with repetitive paragraphs (some essentially copy-pasted), irrelevant digressions (including unverified evidence that is simply beside the point at the pleading stage, such as nearly 18 single-spaced pages of copy-pasted verbatim medical records), and misstatements of law. Worse, the documents are entirely lacking in any kind of narrative structure that would facilitate a reader's understanding of what occurred. Plaintiffs' briefing has not helped in the least, and instead suffers from many of the same issues.

This is not a factually complicated case. Above, I managed to fit all of the relevant facts into two-and-a-half pages. That recitation included facts related to claims that I have now eliminated from the case due to the legal impossibility of recovery. Accordingly, the Court expects Plaintiffs' amended complaint, if any, to be <u>much</u> shorter. Plaintiffs' counsel should take care to remove any paragraphs that repeat facts already stated and to lay out the allegations in a logical order. Plaintiffs are not *pro se*, and the Court and Defendants should therefore not have to hold their counsel to "a 'less exacting standard'" by doing his work for him.[81]

---

[81] *See Berkery v. Equifax Information Servs. LLC*, 429 F. Supp. 3d 24, 29 (E.D. Pa. 2019); *Dluhos v. Strasberg*, 321 F.3d 365, 369 (3d Cir. 2003).

## III. CONCLUSION

Defendants' motions to dismiss pursuant to Rule 12(b)(6) are granted. Plaintiffs are granted limited leave to amend, as outlined above. As such, Plaintiffs will be given fourteen days from today's date to file an amended complaint. If no amended complaint is filed, the action will be subject to dismissal with prejudice.

An appropriate Order follows.

BY THE COURT:

*s/ Matthew W. Brann*
Matthew W. Brann
Chief United States District Judge